Clark vs. Constantine.

CASE 46—PETITION ORDINARY—SEPTEMBER 11.

# Clark vs. Constantine.

APPEAL FROM NELSON CIRCUIT COURT.

A contract to pay one a consideration to induce him to administer upon the estates of the obligor's father and mother, is not prohibited by law or public policy. The consideration is a good one, and the contract enforceable.

GRIGSBY & HARDIN,                    For Appellant,

CITED—

18 *B. Mon.*, 24; *Cunningham vs. Cunningham.*
6 *Dana*, 366; *Wood vs. McCann.*

E. E. McKAY,.                    For Appellee.

CHIEF JUSTICE WILLIAMS DELIVERED THE OPINION OF THE COURT:

The parents of Clark being dead, he applied to Constantine to become administrator; and, to induce him to accept and perform the duties of such, agreed to pay him three hundred dollars.

Constantine became administrator of both the deceased father and mother of Clark; and, some twelve months thereafter, Clark executed the note sued upon of two hundred and fifty dollars, in pursuance of the previous agreement. He put in for defense that the note was executed for the consideration alone "that the plaintiff would administer the two estates" of his father and mother, and "that the consideration has not been performed by plaintiff; for he has made no settlement of the estates," and "that said note was founded on no other consideration whatever other than *the promise*

Clark vs. Constantine.

of plaintiff to administer said estates." And in another paragraph he presents the defense that it was against public policy to promise an administrator compensation beyond the rates fixed by law.

The jury having found for the plaintiff, and the court having adjudged accordingly and refused a new trial, the defendant prosecutes this appeal. After a party has become administrator, the law requires of him fidelity and vigilance in preserving the estate; and the proper courts are to make him a proper allowance for his services out of the estate, not by any universal standard, but according to the peculiar condition of each estate, ordinarily recognizing five per cent. as reasonable; but sometimes the estates are large and easily administered, and five per cent. would be extravagant; at others, they are peculiarly complicated and difficult of settlement, and then it would be quite inadequate. Some estates are small and complicated, and five per cent. would be no compensation. So that even the legal tribunals have a wide range of discretion; and whilst they should fix the compensation, yet we apprehend, that, when the distributees and administor, even after administration, should agree upon this compensation, the courts would very generally adopt it, instead of investigating its reasonableness; and, unless contaminated with fraud or overreaching, the courts would scarcely disturb such agreements.

But when a part or all of the distributees agree on the amount of the compensation, and promise to pay it to induce a party to take upon himself the trouble and responsibility of administration, we perceive no principle of law or public policy which forbids such a contract.

The natural and legal presumption is, that the object in offering such compensation would be to obtain an admin-

istrator of business capacity and integrity of purpose. The dishonest would be but too willing to embrace the opportunity, which administration alone affords, to speculate and peculate upon the estate of the dead; therefore, if there be any bad design or corrupt motive, by any portion of the distributees, in procuring a particular party to become administrator, this should be averred, which is not done in this case; nor, indeed, is there any complaint of the manner of administration, but only an averment that no settlement has yet been made, by way of showing the failure to perform a continuing consideration. Nor is this interfering with the legal duties of the appointing court; for, by *section* 3, *article* 2, *chapter* 37, 1 *Stanton's Revised Statutes*, 502, it shall grant administration, in such cases, to those entitled to distribution, or one or more of them, as may apply; as to these, the law secures preference, and should they, instead of availing themselves of this privilege, select some other more disinterested and often more capable person, the courts would generally be inclined to adopt the party so selected, not that they are compelled to do so; and when the party so selected is unfit for the position, should never accede; but, in the absence of averment and proof, the natural and legal inference should be indulged, that the person so selected by the distributees, and appointed by the court, is capable and honest; hence, no law or public policy violated thereby.

The averment in the first paragraph of the answer is, that the only consideration of the note was "the promise of plaintiff to administer the estates." The note was executed about a year subsequent to taking out the letters of administration, and was payable one day after date, and was given for fifty dollars less

than originally promised; therefore, it must at least be regarded as for an executed consideration, if not as a compromise of existing disagreements and prospective litigations; and, as the administrator was under official bond and security for the faithful and legal discharge of his duties, we see no danger whatever likely to befall the defendant. The danger, the policy, and the law in this class of cases, are quite different from that class of cases where a party, for the purpose of becoming administrator or guardian, shall himself promise compensation.

A party who would purchase such a position, instead of being compensated to take it, would, in the very act, manifest a motive incompatible with the pure purposes of the law, and the natural and legal presumption would be against him; beside, who has the right to sell such positions? Neither the courts nor the parties; and though, in *Cunningham vs. Cunningham* (18 *B. Mon.*, 24), no improper motive appears in the promise of the grandfather of the ward, to his then guardian, to give the minor ward one third of his estate at his death, in consideration that he would resign and let the grandfather become guardian, yet the promise was so palpably against public policy, and fraught with so much danger, that, notwithstanding the moral sentiment of this court was with the ward, yet it would not enforce the contract. In *Woods vs. McCann* (6 *Dana*, 366), although this court very ably exposes the danger and violation of public policy in employing an attorney at law to use his personal influence in obtaining a private enactment, yet they say, to employ him to argue a case before the Legislature, or one of its committees, would not contravene a public policy, and would be a legal valid consideration to uphold a promise for compensation.

No averment of an impure motive in procuring Constantine to become administrator, none of any misconduct or want of fiducial fidelity appearing in the pleadings or proof, we see no violation of law or public policy, nor want of consideration, and therefore no cause to disturb the judgment. Wherefore, it is affirmed without damages, it not having been superseded.