CASE 14—PETITION EQUITY—JANUARY 26.

# Bate v. Bate, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. AN ADMINISTRATOR IS NOT ENTITLED TO COMPENSATION FOR HIS SERVICES in administering an estate in a case in which he procured his appointment by promising and agreeing with the devisees that he would administer the estate and make no charge for his services. It was immaterial whether the promises were made to all of the devisees.

   The judgment of the chancellor refusing to allow any compensation for services to the administrator in this case *is affirmed.*

2. *It violates no rule of public policy to hold one to his agreement* who voluntarily seeks an appointment as administrator of an estate under the promise to the court and parties interested that he will make no charge for his services.

BULLITT, BULLITT & HARRIS,  
W. R. THOMPSON.  . . . . } . . . . For Appellant,

CITED

Revised Statutes, chap. 37.  
Chitty on Contracts, pp. 61, 62, 49, 53.  
2 McCord's Ch. R. 102, McCord v. Blewitt.  
2 Denio, 403, Stewart v. Trustees, &c.  
3 Mar. 433, Outon v. Rodes.  
7 J. J. Mar. 640, McGill v. Burnett.  
6 Dana, 366, Wood v. McCann.  
3 Bush, 652, Clark v. Constantine.  
3 Zab. 353.  
1 Met. 334, Cabell v. Cabell.  
8 B. Mon. 284, Miller v. Porter.  
13 Md. 90, Folck v. Smith.  
15 Wis. 684, King v. Whiton.

W. B. FLEMING,  
R. W. WOOLLEY, } . . . . . . . . For Appellees,

CITED

Chitty on Contracts, ed. 1851, pp. 29, 292, 54, 51.
Perry on Trusts, 817.          2 Blackstone, 297.
Call's Rep. 87 (105).          McCord's Eq. R. 394.
2 Williams on Executors, 1275.
1 Johns. 37 and 534.          1 B. Mon. 179.
2 Mar. 339.                   2 Mon. 151.
1 M. & B. Statutes, p. 668, act of 1797.
5 Dana, 43, Beeler v. Hill.
7 Dana, 17, Clay v. Hart.
5 Johns. Ch. 539, Mason v. Roosevelt.
9 Serg. & R. 209, 223.        4 Johns. 84.
8 Bush, 40, Booker v. Stevenson.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

This record is from the Louisville Chancery Court, on an appeal taken by John T. Bate from a judgment rendered against him in that court. The action was instituted in the court below to surcharge a settlement made in the Jefferson County Court by the appellant as the administrator with the will annexed of his brother G. B. Bate. Robert T. Bate, one of the devisees, was the original plaintiff, but many of the other devisees, by an answer and cross-petition, united in the prayer of the petition.

The devisor, G. B. Bate, was a bachelor, leaving at his death several brothers and sisters surviving him, and the owner of a valuable personal estate consisting principally of three notes for large amounts executed to him for a tract of land sold a short time prior to his death. The personal estate accounted for by the administrator was of the value of $105,250, upon which he was allowed a commission, in his settlement with the county judge, of $6,300.

There was a contest between the appellant John T. Bate and the appellee Robert T. Bate (both of them brothers of the devisor), in the Jefferson County Court, as to who should execute the will. Robert, being older than his brother John, claimed the right to qualify as administrator; and as an in-

ducement for the court to appoint him, and from motives of benevolence to his sisters, agreed to make no charge against them for his services, asserting that they were poor and in need of their full interest in the estate. The appellant suggested to the court that he would qualify and make no charge against any of the devisees for his services. The judge at that time announced from the bench that he would permit both to qualify, but had no order entered to that effect.

The proof is conclusive that the appellant, after this suggestion had been made by the county judge, declined to qualify with his brother, and without giving him notice of this fact sought frequent interviews with some of the devisees, and particularly with his sister, Mrs. Gray, and promised that if they would recommend him he would make no charge for his services and claim only his actual expenses. He enlisted most of the devisees in his behalf upon his voluntary statement and promise that he would make no charge, and obtained from some of them—or his son did for him—their signatures to a petition asking the county judge to appoint him. The son of the appellant also employed an attorney on behalf of his father and the heirs who favored his appointment to present his claims for the position to the county judge. The appellant, upon this voluntary offer on his part, at the instance of many of the devisees or those representing them, to whom the promise had been made, was appointed and qualified as administrator with the will annexed.

The evidence conduces strongly to show that his brother Robert was expecting to qualify with him, as intimated by the court at a former sitting, and was not aware of the intention to appoint his brother until the day he qualified. They were both men of business habits, and fully competent to administer the estate.

There is testimony in the record tending to show that some of the devisees objected to the appointment of Robert T. Bate

VOL. XI.—42

on account of their hostility to his attorney and confidential adviser, but the decided preponderance of the proof is that all opposition was withdrawn by the devisees to the appointment of appellant, upon his voluntary statements, and promises made repeatedly before his qualification that he would make no charge but his actual expenses. These statements he continued to make, not only to his brothers and sisters, but to many others long after his qualification.

He gave also as a reason why he desired to qualify that he was indebted to the estate, and if another qualified he would have to contribute with the rest in the payment of the commissions allowed by law.

The land notes, three in number, collected by appellant amounted to near $78,000, and his own note and that of his sons, together with what was owing by some of the devisees, added to the land notes, constituted near $90,000 of the amount of personalty in his hands, and upon which he was allowed a commission of six per cent. The land notes were promptly paid in bank at maturity, and, so far as appears from this record, there was but little trouble in settling the estate.

Upon these facts the chancellor adjudged that the appellant was entitled to no compensation for his services, and this is the only question of importance presented by the appeal.

It is argued by counsel for appellant that if the facts in this case constituted a contract between these parties in regard to appellant's compensation it was not obligatory—first, for want of consideration; and secondly, that it was void, being in violation of a well-recognized rule of public policy.

It must be conceded that a mere promise to aid or procure an office for another is without consideration, nor can an action be maintained upon such an agreement based upon a consideration. Such contracts, being regarded as interfering with the due course of public justice, are held invalid and as being contrary to public policy.

There is a manifest distinction between the sale and purchase of a public position, or an agreement to aid in procuring an office, and cases where the amount of compensation to be paid one occupying a fiducial position like that of an administrator is agreed upon by parties who are alone interested and fully competent to contract with reference to such matters. While such agreements are subject to the scrutiny of the chancellor or the court having the power to adjust and settle the accounts of the fiduciary, still when fairly made without fraud. or imposition on the parties interested or the rights of others we see no reason why the rate of compensation thus agreed on should not be adopted by the court, although for a larger or less sum than the fiduciary would be entitled to by law. The difficulty attending the management and settlement of estates often requires the aid of experienced business men, whose services can not be commanded for the allowance to which the county judge is restricted by the provisions of the statute.

The statute designates the persons first entitled to administration, and when they decline to qualify or are unfit for the position the court in its discretion selects some suitable person for the place. Those interested are generally consulted and their wishes regarded as to the person to be appointed when possessing the requisite qualifications, and we see no reason why the court might not consult their wishes also as to the matter of compensation. It is the duty, however, of the court to make the allowance in all cases in settling with the fiduciary, and no commission can be allowed exceeding that fixed by law, so as to affect the rights of those who, by reason of their disabilities, are in no condition to act for themselves; but where the parties interested and capable of contracting have by an agreement fixed upon a fair and reasonable compensation the court should adopt it, so far as it affects their rights, as the amount to be paid the fiduciary.

In the case of Clark v. Constantine (3 Bush, p. 652) Clark

made a contract with Constantine by which he had agreed to pay the latter the sum of $300 to induce him to qualify as administrator upon the goods, &c., of his deceased parents. He executed his note for the money, and upon an answer filed to an action on the note alleging a want of consideration, this court held that as there was no charge or evidence of fraud or unfairness in the transaction that agreement should not be disturbed.

As said in that case, the court, instead of presuming that the party selected to qualify was incompetent for the position and the contract made for a corrupt purpose, in the absence of any fraud or overreaching, should indulge in the presumption that the object in offering the compensation was to obtain an administrator of business capacity and integrity of purpose. Although the appellant upon the facts of this case could not have maintained an action against the devisees for a failure on their part to recommend him to the county court, or the devisees an action against him for declining or refusing to qualify as administrator, still, having voluntarily assumed the burden of administering as an act of benevolence to the devisees, who were his brothers and sisters, and having procured their aid in obtaining the appointment for him upon his repeated promises that he would make no charge, he ought not to be adjudged compensation. His brother had announced in open court that if permitted to qualify as administrator he would make no charge against his sisters, and to defeat this liberal offer on the part of his brother, appellant announced his willingness to accept the appointment without any compensation for services, and afterward, under an express stipulation to that effect, by the aid of the devisees was permitted to qualify. His relationship to the parties and his desire to save his own burden of the expense was at that time the inducement for this gratuitous undertaking. His sisters would have saved their part of the commission if administration had been granted their brother Robert; and

the result will be, if compensation is allowed appellant, that the violation of his many promises will relieve him from the payment of commissions and make his brothers and sisters liable.   It violates no rule of public policy to hold one to his agreement who voluntarily seeks an appointment, in a case like this, under the promise to the court and parties interested that he will make no charge for his services.   The desire to administer upon large estates for the purpose of obtaining compensation in the way of commissions would prompt many to tender a donation of their services, if they were assured by the chancellor that such promises would be disregarded and the full compensation allowed them as fixed by law.

In the case of Mason against Roosevelt and others (5 Johnson's Chancery Reports, p. 534) the administratrix of an estate committed the entire possession and management of the estate to an agent and attorney in fact with power to settle, collect debts, etc.   This agent collected and disbursed several thousand dollars.   In an action for a settlement by the heirs it appeared that the agent was related by marriage to the family, and had assumed to control the estate at the request of the administratrix, and from motives of humanity and benevolence alone, as he had been a friend to the intestate.   The court held that he was not entitled to any commission.

In McCord against Blewitt (2 McCord's Chancery Reports) the widow and son-in-law of the deceased administered.   The court said: "On the question of commissions the court is unanimously of the opinion that the executor is not entitled to them.   He voluntarily undertook the duty under the express stipulation that he would not charge them, and he can not now be permitted to violate that contract; that which was expressly declared to have been intended as a gratuity shall not now be converted into a demand."

It is immaterial whether the promises made by appellant were made to all the devisees or not.   It is certain they were

made to Mrs. Gray and to those representing the interest of others, and so often repeated as to leave no doubt of appellant's intention at the time, and that these assurances to the devisees caused his appointment, to the exclusion of his brother. The court may not have been induced by such considerations to make the appointment, as both brothers were in every way qualified for the position; but appellant will not now be permitted to disregard his benevolent intention, or speculate, by violating his repeated promises, upon the rights of his brothers and sisters.

As to the questions made on the cross-appeal of the appellees, the evidence conduces to establish a gift of the personal property, the value of which is sought to be recovered, or at least to present such a state of case as relieves the administrator from responsibility therefor.

The judgment of the chancellor is affirmed on both the original and cross-appeal.