## FARMERS' LOAN & TRUST CO. *v.* CENTRAL RAILROAD OF IOWA.

*(Circuit Court, D. Iowa.* May 26, 1881.)

1. RECEIVER—EXTRA COMPENSATION.
   In case the duties of a receiver prove to be more arduous than he or the court expected, or in case he performs duties in addition to those ordinarily required of a receiver, in either case, provided he has faithfully administered his trust without intentional error or fraud, he is entitled to compensation in addition to that fixed by the order under which he was appointed.

2. SAME—SALE BY, OF HIS OWN PROPERTY, TO CORPORATION.
   Under the circumstances surrounding the sales, *held,* that certain sales by the receiver to the corporation, of property of which he was a sole or part owner, were not fraudulent in such a sense as to deprive him of just compensation for services rendered.

3. SAME—INSTRUCTIONS TO, CONSTRUED.
   Instructions in writing accompanying the order of apportionment, which directed as follows: "It is not expected that you will serve as superintendent. You will continue the present superintendent, or employ another, as your judgment dictates, on the best terms that will secure a good man,"—were not intended to prohibit the receiver from discharging, in person, the duties of superintendent.

Before McCRARY and NELSON, JJ.

McCRARY, C. J. J. B. Grinnell, petitioner, was appointed by this court receiver of the Central Railroad of Iowa on or about the fifteenth day of January, 1876, to succeed one D. M. Pickering, and his compensation was fixed by the order of appointment at $3,000 per annum. Accompanying the order of appointment were instructions

in writing from the circuit judge, (Honorable John F. Dillon,) which, among other things, directed as follows:

" It is not expected that you will serve as superintendent. You will continue the present superintendent, or employ another, as your judgment dictates, on the best terms that will secure a good man."

The petitioner served as receiver during a period of two years and three and one-half months. From January 1, 1876, until May 1, 1877, he had no general superintendent, and performed, during that period of 15 months, the duties of a general superintendent in addition to those of the receivership. By petitioner's direction the duties of the offices of auditor and cashier were united in one person, whereby a saving to the company of about $100 per month was effected. The petitioner, upon entering upon his duties, reduced the salaries of all officers and employes under him 10 per cent. The company had an attorney employed at $60 per month salary and $20 per day additional when actually employed in court. The petitioner attended in *person* to some of the legal business of the company, being engaged in this way for about 30 days. In the disbursement of the revenues of the road during his administration, the petitioner applied to the payment of debts contracted by his predecessor during his receivership the sum of $280,000. After petitioner's appointment the court and parties interested in the main suit required frequent statements and reports of the accounts in the general office of the road, which called for a greater amount of time and labor on the part of petitioner than would be required ordinarily at the hands of a receiver. During petitioner's service his general health and eye-sight became much impaired, and it appears that in the discharge of his duties the petitioner was frequently called to travel on the trains and to break his rest at night.

The master finds the foregoing facts, and also reports that petitioner had effected a saving in the expenses, under various heads, in his operation of the road, compared with the similar expenses of his predecessor, of $85,000 in about 18 months. On the part of complainant the master finds that there is still a large balance unsettled on the final account of petitioner as receiver. This balance consists of three items:

(1) An item of $4,000 expended by the receiver to purchase, for the benefit of the company, a half interest in an uncompleted railroad, known as the "Farmers' Union Railroad," and this without application to, or order or approval of, this court. (2) An item of $1,177.90, being a note of the "Iowa Terra-Cotta and Fire-Clay Company," received in payment of freights due the company as cash, and credited to the receiver in his accounts as such. This

note cannot be collected, and is therefore by the master charged back to the receiver. (3) An item of about $190, growing out of a contract for water supply at Grinnell.

The petitioner paid $400 in advance to certain parties who agreed to furnish such water supply, but failed to keep their contract, whereupon petitioner paid back to the present receiver the sum of $210, leaving the above balance unsettled. Upon these facts Mr. Grinnell petitions the court to increase his compensation to $5,000 per annum. This is asked more specifically upon the grounds following, to-wit:

(1) For performing double service as receiver and general superintendent for a period of 15 months. For this the sum of $2,500 is claimed. (2) For saving effected by joining the offices of auditor and cashier. For this $1,340 is claimed; (4) On account of duties and responsibilities not anticipated in accepting the office, growing out of debts amounting to $280,000 previously contracted. On this sum half of 1 per cent. is claimed, amounting to $1,400.

The allowance is further urged upon the ground of extra labor, care, and responsibility occasioned by the bad condition of the road, the necessity for new work, and extraordinary expenditures.

The complainant, in its answer to the receiver's petition, insists:

(1) That the receiver had no right, under this order of the court, to unite the offices of receiver and superintendent; (2) that the petitioner was bound to perform the duties performed by him—if at all—without extra compensation; (3) it was petitioner's duty to disburse the money in payment of debts contracted by his predecessor; (4) the trusts and responsibilities imposed upon the petitioner were such only as usually attend upon such avocations.

The answer further set forth the facts in relation to the three unsettled items in the account of the petitioner as receiver, above mentioned, and avers that said payments were unauthorized, and said Grinnell should account to this court for and pay over the amount of said items to his successor, and should be "disallowed any additional compensation for any cause or under any pretext."

It is further insisted in argument, but not set forth in any pleading, that the petitioner's claims should be rejected on account of certain transactions by him as receiver, which will be particularly stated hereafter. We will briefly consider two questions:

(1) Whether, assuming that the receiver has faithfully administered his trust without intentional error or fraud on his part, he is entitled to an additional allowance, and if so, how much? (2) Whether by his conduct in office he has justly forfeited any claim to such additional allowance?

We are clearly of the opinion that the salary originally fixed was inadequate, considering the nature of the duties and responsibilities it

devolved upon the receiver, who was called upon to manage the repair, preservation, and operation of a large line of railroad, and to disburse in a period of 27½ months the large sum of $1,700,000, and who was required to give bond in the sum of $50,000. Mr. Grinnell's predecessor received $5,000 per annum, and it is a well-known fact that a much larger compensation is frequently paid for such services. Nevertheless, the petitioner agreed to serve for $3,000 per annum, and we know of no sufficient reason for releasing him from that agreement, and adding to his compensation, unless such reason can be found in the fact that his duties proved to be more arduous than he or the court expected, or that he performed duties for the company in addition to those ordinarily required of a receiver.

Some of the specific claims of petitioner cannot be allowed, because they are based, not upon the performance of extra or unexpected duties, but upon the ground that he discharged the proper duties of his office with fidelity and economy, and in such a manner as to save money to the company. Of this character is the claim for an allowance on account of the uniting, by order of petitioner, of the offices of auditor and cashier; also the disbursement of money in payment of debts due before his appointment, and some others of a similar character. However praiseworthy the petitioner's conduct may have been in respect of these matters, he did no more than his duty; no more than was required of him by his contract.

It does appear, however, from the master's report, and from the record of the long and bitter contest in the foreclosure suit, that demands were made upon the receiver for reports and statements of accounts in the general office, requiring a greater amount of time and labor on the part of the petitioner than was anticipated at the time of his appointment. We think also that it sufficiently appears that the condition of the road, and the state of the litigation concerning it, devolved some extra duty upon the receiver, and some work and travel at night, and outside of the usual hours of labor. For this extra service we think him fairly entitled to an allowance of $1,300.

It is conceded that during a period of 15 months petitioner discharged the duties of receiver and superintendent, and thus saved the salary of one official. It is clear that this was extra service not contemplated by the original order of appointment. It is also clear that the sum claimed ($2,500) for this extra duty is less than would have been required to pay the salary of a competent superintendent. But it is insisted that the receiver violated his instructions by per-

forming the duties of the general superintendent.   We do not think so.   True, he was not *expected* to serve as superintendent, and he was instructed generally to continue the superintendent then employed or employ another, in his discretion; but a fair construction of the order does not warrant the conclusion that the court intended to prohibit him from discharging the duties of superintendent in addition to those of the receivership.   From the whole tenor of the letter of instruction it is evident that the court intended to and did give the receiver a large discretion in the administration of the affairs of the company.   We think the sum claimed under this head should be allowed.   We think, also, that the claim for services as attorney for the company should be allowed, in so far as by such service the receiver saved the company expense.   Upon looking into the report of the master, and the evidence, we conclude that Mr. Grinnell, by the service rendered as attorney, saved the payment by the company of at least 20 days' service in court of the regular attorney of the company, at $20 per day.   We therefore allow this item, as claimed, in the sum of $390.

"A receiver may be entitled to allowances beyond his salary for any extraordinary trouble or expense he may have been put to in the performance of his duties, or in bringing actions, or defending legal proceedings which have been brought against him."   Kerr on Receivers, 219.

All this, however, is upon the assumption that the receiver has been guilty of no such fraudulent conduct as ought to forfeit his right to compensation.

We have already called attention to three items in the account of the receiver which have been rejected by the master as unauthorized, and to the clause in the answer wherein it is alleged that by reason of these the receiver should not be allowed extra compensation.   Concerning these items it is sufficient to say that they have never been allowed to the receiver; that they stand charged against him, to be accounted for on final settlement; and that there is no proof upon which it can be maintained that any fraud was intended by him with respect to either of them.   All that he did was perfectly consistent with an honest belief on his part that he was acting within his authority, and for the best interests of the company.   But our attention is invited to certain other items in the receiver's accounts which have been passed by the master, and which are now charged in argument—but not in the answer—as fraudulent, and of such character as to deprive petitioner of extra compensation.

The first of these is an item of $1,757.45 for ties which belonged

to petitioner, and were furnished by him for the repairing of the road during his receivership, and for which he received 40 cents for cross-ties, and 75 cents for bridge-ties. It does not appear that the ties were secretly furnished, and the master reports that the road had become unsafe for the operation of trains, and that the wet weather which prevailed rendered it very difficult to haul ties from the timber, so that it was hardly possible to obtain them. The fact that under these circumstances they were furnished by the receiver himself, from a lot he had on hand, does not render the transaction fraudulent *per se*. If they were taken and paid for by the receiver at an exorbitant price, with intent to defraud the company, the case would be different. This, however, cannot be regarded as proven by the proof before us. The proof as to the value of the ties is somewhat conflicting, and there is evidence strongly tending to show that *petitioner* had nothing to do with fixing the price. This whole subject remains to be considered and reported upon by the master, under bill filed by complainant to surcharge and falsify the accounts of petitioner. For the present, therefore, we only say that the item is not shown to be fraudulent in such a sense as to deprive petitioner of just compensation for services rendered by him.

The same may be said concerning the charge that the petitioner as receiver purchased for the road lumber in which he was personally interested. It appears that petitioner had nothing to do with fixing the price. It is probable that some of this lumber was of inferior quality, and that General Superintendent Russell and the foreman of the car-shops fixed a higher price upon it than was just; but in the *absence* of proof we cannot presume that petitioner knowingly and corruptly received more than his interest in the lumber was worth.

As to the other items objected to there is still less evidence of corrupt purpose, and we do not think it necessary to consider them in detail. A clear distinction is to be drawn between the question whether the receiver shall be allowed for these expenditures upon final settlement, and the question whether his conduct with respect to them has been such as to deprive him of the right to receive compensation for his services. It is only upon the ground of deliberate fraud that so severe a penalty as a loss of all pay can be with propriety enforced; while on the ground of error or mistake alone the receiver may be charged with the expenditure upon final settlement. It is manifest that we cannot find fraud established by the proof before us. Indeed, there is nothing in the answer to petitioner's claim, nor in any of the pleadings forming the issues now on trial,

referrring to the items to which we have just referred. We notice them because they were made the subject of an unauthorized investigation before the master, and of a report prepared but not filed by him, and have been discussed by counsel on the hearing with the understanding that the court should consider them, in so far as they are found proper to be considered, in determining the question of the receiver's compensation. It would be improper for us to discuss the question whether these items, and others objected to, should be allowed to the receiver in his final accounts. . All questions of that character must be reserved until the hearing upon the master's report upon that subject. What we now decide is that there is no showing of such fraudulent conduct on the part of the receiver as should deprive him of compensation for services.

The order is that petitioner be allowed for extraordinary services the sum of $4,390, to be credited to him on final settlement.

NELSON, D. J. I have examined carefully the facts upon which the application for additional compensation is claimed, and fully concur in the foregoing opinion of the Circuit Judge—McCRARY.