W. LICHTENSTEIN *v.* E. H. DIAL.

1. RECEIVER. *Compensation thereof.*

     The compensation of receivers is not regulated by statute or by any inflexible rule, but rests in the sound discretion of the court.

2. SAME. *Discretion; how guided.*

     In the exercise of such discretion, the court should not be limited to the allowance of a sum for which a competent person could be procured by private contract or public bidding to discharge the duties required, but should allow reasonable compensation in view of the particular facts of each case and the duties and responsibilities of the office.

3. MANAGEMENT OF BUSINESS BY RECEIVER. *Compensation therefor.* *Evidence.*

     While the court in fixing the compensation of receivers whose duties involve receiving and disbursing moneys, may consider the compensation fixed by law in analogous cases, if the receiver is also manager of a business, a gross sum as specified compensation may with propriety be allowed; and, in determining what sum is reasonable, the largest liberty of inquiry is permissible.

FROM the chancery court of Lauderdale county.

HON. SYLVANUS EVANS, Chancellor.

The only question presented by this appeal is as to the proper compensation of receivers appointed by the chancery court.

One S. I. Solomon had been appointed receiver of the property and assets of every description belonging to the mercantile firm of Charles Silverstein & Co., a receiver being necessary pending certain litigation in that court involving said property. At the ensuing term of the chancery court, after said appointment, Solomon was removed as receiver and the appellee, E. H. Dial, appointed in his stead. Pursuant to this appointment, the appellee gave bond as receiver in the sum of $10,000, and took possession of the assets of said Silverstein & Co. Sureties for the bond were provided by Lichtenstein. These assets consisted almost entirely of a stock of silverware and jewelry, valued according to the inventory at $9776. The value of the fixtures and other miscellaneous items made the aggregate assets $11,799. The appointment and qualification of the appellee was on the 16th of July, 1889, and on the 20th of July he received from Solomon the assets, and proceeded at once to make an inventory of the same, in which labor he found it necessary to employ a clerk to assist him. The stock of goods was not sold or otherwise disposed of by the appellee, and apart from the labor of making the inventory, which required three or four days, the duties of the receiver were confined to the preservation of the assets. On the 6th of August, following his appointment, the appellee procured from the chancellor, in vacation, an order authorizing him to sell the stock of merchandise, and pursuant to the order offered the stock for sale to two or three persons, whom he supposed might purchase, but his efforts to sell were unsuccessful. It does not appear that the appellee performed any other service as receiver, except that he kept an oversight over the stock of goods and caused some of the most valuable articles to be removed to his home for safe keeping.

On the 17th day of August, 1889, Silverstein and Lichtenstein compromised and settled their litigation, and the former assigned to

the latter all his interest in the assets of Silverstein & Co.   Silver-
stein gave his consent in writing that Dial, the receiver, should
turn over the same to Lichtenstein.   Thereupon Dial presented his
petition to the chancellor showing that the parties had compromised
their litigation, and asked an order authorizing him to turn over
the property to Lichtenstein.   The order was granted, and on the
following day Dial turned over to Lichtenstein all of said assets,
taking his receipt therefor.   At the ensuing term of the chancery
court Dial made a final report as receiver, and filed therewith an
inventory of the assets received by him from his predecessor, and
which he had delivered to Lichtenstein.   He asked to be dis-
charged and for an allowance of $42 expense incurred for clerks
and labor, and also for proper compensation for his services as
receiver.   He claimed the sum of $500 for his services, which sum
was objected to by the defendant, Lichtenstein, as being excessive.
Whereupon the court stated that it would hear evidence as to what
was a reasonable compensation.   The testimony of Lichtenstein
and Dial showed the facts as above stated.   Three practising
attorneys were then examined by the court on the question of com-
pensation, and they concurred in the opinion that $3\frac{1}{2}$ or 4 per cent.
on the value of the assets would be a reasonable allowance.   The
court allowed the appellee 4 per cent., which amounted to $471.98,
and also $42, his actual expense incurred for clerk hire and labor.

From this decree Lichtenstein appealed.

*J. S. Hamm* and *R. F. Cochran*, for appellant.

In this country, as in England, no established rule has been
fixed for determining the amount of compensation to be allowed
receivers.   It may be said in general terms that the compensation
should correspond with the degree of business capacity, integrity
and responsibility required in the management of the affairs in-
trusted to the receiver, and that a reasonable compensation should
be allowed according to the circumstances of each case.   High on
Receivers, § 783 and cases cited.

In fixing this the court is not governed by the special qualifica-
tions and standing of the person appointed, but should only allow

what would be a reasonable amount for a person of ordinary ability performing the work. Ib. § 784; Beach on Receivers, §§ 758–763 and cases cited.

Tested by this rule, which seems to be in harmony with § 1926 of the code of 1880, it seems clear that the allowance made in this case was grossly excessive. The appellee was a substituted receiver, and was in possession of the property only thirty-four days. All he did was to have an inventory of the stock taken by others, to whom he seems to have allowed $5 per day for their work. Though he procured an order to sell, he sold nothing. Nor did he collect any of the debts except a very small amount. He took no steps to make Solomon, his predecessor, pay over to him the money in his hands as was his duty. He simply closed and locked the store, and went there occasionally to see if everything was all right. Lichtenstein furnished the security on his bond as receiver, and this caused him no trouble.

This is the record of Dial's acts, and it is apparent that he did little or nothing towards administering the trust. The extraordinary allowance asked by him and allowed was made on the gross amount of the assets without proof as to their value. The allowance cannot be justified by the evidence of the attorneys who made statements as to what was a reasonable compensation. They were not qualified to testify as experts. Indeed, they are not shown to have any peculiar knowledge entitling them to speak as such, nor was there anything in the nature of the inquiry before the court to render the testimony of experts admissible. If they testified as lawyers, we submit it is not competent to give in evidence what is the law and the practice in reference to the allowance of compensation to receivers. It is the duty of the court to know the law and also the practice in this respect. The examination of witnesses on the subject of compensation was entirely unnecessary. *McGee v. Coperthwaite*, 10 Ala. 969.

As a matter of justice and right this court should reduce the sum allowed at least one-half, and then the compensation would be very large and liberal in view of the service performed and the responsibility incurred by the receiver.

WOODS, C. J., delivered the opinion of the court.

A careful examination of the authorities referred to by counsel for appellant fails to satisfy us that the compensation of a receiver should be fixed at that sum for which a person possessed of competent qualifications could have been employed by private contract to perform the services rendered in a given case.

A receiver is an officer of the court from which he holds his appointment. He is selected by the court in the exercise of its sound judicial discretion, regard being had to the nature of the services required in each case, the competency of the person to be appointed and the responsibilities he must assume. He is to discharge his duties under the direction of the court appointing him, and may be summarily dealt with for disobedience to or neglect of any orders given him by the court touching the custody and management and control of the estate. Being an officer of the court selected in the manner just indicated, and with reference to the services to be performed, and looking to his competency and his responsibilities, we wholly repudiate the theory of appointment which looks to the selection of any person by private contract, or at public auction, who will undertake the office for the smallest compensation. The office of receiver not being conferrable on any such principle, it would seem to follow that the compensation of the officer could not be determined on such principle likewise. The compensation, like the appointment, is determined by the court in the exercise of its judicial discretion, and not by the result of bidding, even by persons every way competent to discharge the duties of the office.

In allowing the compensation in this state no inflexible rule, indeed, no written rule of legislative requirement, is imposed upon the court. The compensation must be reasonable compensation in view of the facts of each case, and in view of the duties and responsibilities of the receiver. By what means or in what manner the court will arrive at its determination as to what sum is reasonable, no positive rule is to be found, and the court should have the largest liberty of inquiry and ascertainment before actually deciding. In receiverships of that character in which the officer is at once receiver and manager of a business, a gross sum may be allowed as

specific compensation for services, and with propriety, as we think. In other cases in which the receiver's duties are confined to the receipt and disbursement of money, the court might wisely refer to the rule and rate of a given percentage in analogous cases, when such percentage is regulated by law, and might properly adopt such rule and rate, if, in its discretion, the same would amount to reasonable compensation. The reasonableness of the compensation is matter exclusively for the determination of the court; the manner and means of exercising that discretion in endeavoring to ascertain what is reasonable must be left largely to such court also.

Has there been an abuse of this discretion in this case? Is the compensation allowed by the court below grossly excessive, as appellant contends? We unhesitatingly answer both inquiries negatively. In making the allowance here complained of, if the court below had looked only to the case as the records disclosed it, refraining from hearing any evidence to aid it in determining what was reasonable compensation, and had made this allowance, we should be constrained to decline to overrule its decree, for the reason that on the record made in the case, and in the absence of the evidence introduced, we are wholly unable to say the compensation was grossly excessive.

But the court below prudently and cautiously took the evidence of three members of the bar as to what would be reasonable compensation for the receiver, and his decree perfectly corresponds with the opinions of these gentlemen.

The compensation appears to be not grossly excessive.

*Affirmed.*