## POLK ET AL. v. JOHNSON.

[No. 3,970. Filed November 25, 1902.]

1. RECEIVERS.—*Appointment.—Compensation.*—The appointment and the fixing of the compensation of a receiver are judicial acts. p. 481.

2. SAME.—*Compensation.—Agreements With Creditors Concerning.— Public Policy.*—Where creditors petition the court for the appointment of a certain person as receiver of an insolvent, upon such person's promise not to charge for his services, such agreement not to charge is not void for public impolicy. p. 481.

3. CONTRACTS.—*Consideration.—Waiver of Objections.*—Where an insolvent and his creditors withhold their objections to, and recommend the appointment of, a person as receiver of the property of such insolvent on his agreement to make no charge for his services, such waiver of the objections is a sufficient consideration for such agreement. p. 481.

4. SAME.—*Violation.—Immorality.*—Where a person has agreed with an insolvent and his creditors to act as receiver of such insolvent's property, without compensation, it would be a violation of good morals to permit such receiver to make a charge for such services. p. 485.

From Johnson Circuit Court; *Vinson Carter,* Special Judge.

Grafton Johnson filed his final report as receiver of the property of James T. Polk, to which James T. Polk and others filed exceptions. From a judgment in favor of the receiver, exceptors appeal. (On appeal to Supreme Court, see 160 Ind. 292.) *Reversed.*

*Charles F. Coffin, Leonard J. Hackney* and *Eldridge & Barker,* for appellants.

*G. M. Overstreet, E. L. Branigin, Miller & Barnett* and *E. A. McAlpin,* for appellee.

Roby, C. J.— The proceedings out of which this appeal arises were had in the lower court upon exceptions filed by the appellant James T. Polk to the amended final report of Grafton Johnson, the appellee, as receiver of the property and estate of said Polk; said Johnson having been theretofore appointed such receiver by the Johnson Circuit Court in a cause therein pending. The appellee, in such report, claimed an allowance of $20,000 for his services, and was allowed, upon hearing, $9,500 therefor.

Subdivision one of exception two was as follows: "It is shown to the court: That the property and business of the estate of said receivership have at all times been located at the town of Greenwood, whose population was, when the receiver herein was appointed, about 1,000, and was to a considerable degree supported by said business; that said Johnson and his family, when this proceeding was instituted, owned vast properties in and about said town, consisting of business houses and rental dwellings and farming lands, the rental value and rentals of which depended in a great measure upon the continued operation of said business; said business employing the principal part of. the labor of said community; that, in addition to said interests of said Johnson in the prosecution of Polk's business, he was conducting a banking business which was patronized by said Polk, and said Johnson at said time was a creditor of said Polk in a large sum, the success of which credit, in a measure, depended upon the value of the plant and business of said Polk, and said value depended almost wholly upon the continued prosecution of said business. In view of the foregoing facts, said Johnson, well knowing that the court, or the judge thereof, would probably not appoint a receiver for said property and business who was objectionable to said

Polk, sought said Polk, and importuned him to make no objection to his (said Johnson's) appointment as receiver, and to consent to and to request the court to appoint him as such receiver; that to induce and persuade said Polk so to withhold objection, and to consent and request, said Johnson urged that his above-named interests in the business of said Polk and its successful operation, and his personal friendship for said Polk, were such that he could and would, if appointed receiver, discharge the duties of the trust with diligence and fidelity, and without allowance or compensation other than he would receive from the advantages to said properties and to said banking business and to the amount so owing to him; that by reason of said interests of said Johnson in the success of the business, and by reason of his said promise to discharge the duties of receiver without allowance as aforesaid, said Polk did not object to said Johnson's appointment as receiver, but consented to such appointment, and requested the court and the judge thereof that said Johnson, by reason of his said promises, be appointed receiver of said property and business; that, in addition to his said consent and request for the appointment of said Johnson, other persons interested, personally and as creditors of said Polk, requested the court and the judge thereof to appoint said Johnson, because of the economy to said estate in conducting the receivership without salary, fees, or allowances; that, in view of the facts aforesaid, and of the further facts that said Johnson was well qualified for the duties, he was appointed and acted as receiver of said estate. And of each and all of the foregoing facts said Polk offers to make proof." Upon appellee's motion, this subdivision of the exception was stricken out; appellants excepting thereto. At the trial, appellant Polk took the witness-stand, and certain questions were propounded to him, intended to elicit evidence similar in import to the statements of the exception. Objections were sustained to these questions, and the rulings thereon saved.

1. It may be premised that the appointment of the receiver and the fixing of his compensation are judicial acts; that the court could in nowise be bound by contracts between individuals as to what it should or should not do. *Lichtenstein* v. *Dial* (1890), 68 Miss. 54, 8 South. 272.

2. Appellee argues that the agreement set up in the exception falls within this principle, and was against public policy and void, and that there was, therefore, no consideration for his promise. It is not, however, averred that any attempt was made to prevent the exercise of the fullest judicial discretion in making the appointment. It is averred that the appellant Polk was solicited to consent to the appointment of appellee as receiver, and request the court to make such appointment, and to make no objection thereto. All this he might lawfully do. Suggestions and recommendations in such matters by the parties interested therein are not improper, and are often desired by the court. They can be, in the nature of things, nothing except suggestions and recommendations, but they are not forbidden by consideration of public policy or otherwise. *Addison* v. *Bowie* (1829), 2 Bland 606; *Williamson* v. *Wilson* (1826), 1 Bland 418; *Gowan* v. *Jeffries* (1840), 2 Ashm. 296; *Bate* v. *Bate* (1876), 11 Bush 639; *Hanover Fire Ins. Co.* v. *Germania Fire Ins. Co.* (1884), 33 Hun 539; High, Receivers (3d ed.), §§63-65; Beach, Receivers (2d ed.), §§30, 31; Smith, Receivers, p. 62.

3. Withholding such objection and recommending the appointment at the request of appellee constituted a consideration for the promise to relieve the estate from a large item of that expense which makes receiverships onerous and not infrequently destructive, assuming that the things requested to be done and omitted were not illegal. *Wolford* v. *Powers* (1882), 85 Ind. 294, 44 Am. Rep. 16; *Vigo Agricultural Society* v. *Brumfield* (1885), 102 Ind. 146, 52 Am. Rep. 657; *Keller* v. *Orr* (1886), 106 Ind. 406. The policy of the law is expressed as follows: "No party

or attorney, or other person interested in an action, shall be appointed receiver therein." §1237 Burns 1901, §1223 R. S. 1881. The receiver represents the court, occupies a trust relation toward the parties, and ought always to be indifferent between them. The appointment of a creditor who has or may have a private interest to serve is of doubtful propriety, at least, and it may be safely assumed that such appointment would not have been made by the court below over the objection of appellant. In a recent case (*Ephraim* v. *Pacific Bank* [1902], 136 Cal. 646, 69 Pac. 436), cited by both parties, it was held that where a person solicited the appointment as receiver for real estate, and promised the mortgagee thereof to look to the rents alone for compensation, he could not, after the cause was dismissed and the property had passed out of his hands, recover from the mortgagee the amount of an allowance made to him by the court. If this action were between appellant Polk and appellee, the case would be exactly in point. That agreement was not to serve without compensation, but to look therefor to the rents of the real estate. Fixing the amount of compensation by the court was not, therefore, an act conflicting at all with the terms of the agreement.

In *Steel* v. *Holladay* (1890), 19 Ore. 517, 25 Pac. 77, the receiver at the time of his appointment represented to the court that he would not claim compensation, he being interested in the property. Other interested parties seem to have consented to the appointment in reliance upon this promise. Compensation was refused to him, although it was shown that the work had proved much greater than was anticipated when the appointment was made. It was said by the court, that the representation was the foundation upon which the appointment rested. In the case at bar it is not alleged that the undertaking to render gratuitous service by appellee was brought to the attention of the court at the time the appointment was made. It is very well established that an executor, accepting his trust under a will wherein

it is stipulated that he shall act without compensation, by such acceptance creates a binding contract so to act. *Ross* v. *Conwell* (1893), 7 Ind. App. 375; *Secor* v. *Sentis* (1882), 5 Redf. Surr. 570; *Mulligan's Estate* (1893), 157 Pa. St. 98, 27 Atl. 398; §2552 Burns 1901, §2397 R. S. 1881. There are many cases where administrators have been appointed upon the agreement with those interested in the estate to serve in such capacity without compensation, and have thereafter endeavored to obtain allowances for services. Such allowances seem invariably to have been refused. *M'Caw* v. *Blewit* (1827), 2 McCord Eq. *90; *In re Davis's Estate* (1884), 65 Cal. 309, 4 Pac. 22; *Farmers Loan & Trust Co.* v. *Central R. Co.* (1881), 8 Fed. 60, 2 McCrary 321; *In re Hopkins* (1884), 32 Hun 618; *Bate* v. *Bate, supra; Clark* v. *Constantine* (1868), 3 Bush 652; *Bassett* v. *Miller* (1855), 8 Md. 548. Trustees and commissioners who sell real estate under similar circumstances are denied compensation. *Bowker* v. *Pierce* (1881), 130 Mass. 262; *Barry* v. *Barry* (1847), 1 Md. Ch. 20; *Ridgely* v. *Gittings* (1827), 2 Harr. & G. 58; *Mott* v. *Fowler* (1897), 85 Md. 676, 37 Atl. 717.

The analogy between the distribution of an insolvent estate by a receiver and the distribution of a decedent's estate by an administrator, so far as the duties of the receiver and administrator are concerned, as well as their attitude toward the court appointing them, is very close, while in a general sense the law applicable to trustees has no exception in the case of a receiver. 3 Pomeroy, Eq. Jurisp. (2d ed.), §1336. In determining whether there was sufficient consideration for the promise of an administrator to administer without charge, the fact that the person to whom the promise was made had a prior right to letters has been given prominence in a number of cases, but in others the contract is held binding, although the person with whom it was made had no such prior right. Very strong language is used by the courts in some of the cases cited.

In *Bate* v. *Bate, supra,* it was said: "The court may not have been induced by such consideration to make the appointment; but appellant will not be permitted to disregard his benevolent intention, or speculate, by violating his repeated promise, upon the rights of his brothers and sisters." It was further said in the same case: "It violates no rule of public policy to hold one to his agreement who voluntarily seeks an appointment in a case like this under the promise to the court and parties interested that he will make no charge for his services. The desire to administer upon large estates for the purpose of obtaining compensation in the way of commissions would prompt many to tender a donation of their services if they were assured by the chancellor that such promises would be disregarded, and the full compensation allowed them as fixed by law."

In *M'Caw* v. *Blewit, supra,* it was said: "On the question of commissions, the court are unanimously of opinion that the executor is not entitled to them. He voluntarily undertook the duty under the express stipulation that he would not charge them; and he can not now be permitted to violate that contract. That which was expressly declared to have been intended as a gratuity shall not now be converted into a demand." In *Bassett* v. *Miller, supra,* it was said: "While such contracts should not be encouraged, it is far better, in view of public policy and sound morality, that they should be sustained, than that conduct should be tolerated, by this court, by which solemn engagements may be repudiated, and fraud and deception perpetrated with impunity." The agreement to act without compensation operates upon the party making it, and amounts to a waiver by him of that which he has a right to forego. Being made upon a valuable consideration, such as is satisfactory to him at the time, it follows that he can not thereafter be permitted to change his mind. The right to compensation may be relinquished or waived, and, where there has been such relinquishment or waiver, no allowance can afterwards be made.

11 Am. and Eng. Ency. Law (2d ed.), 1286; 2 Beach, Trusts and Trustees, §748; *Bate* v. *Bate, supra; In re Hodgman* (1893), 140 N. Y. 421, 429, 35 N. E. 660.

4. The attitude alleged by the exception to be assumed by appellee is bad in morals. It would be a reproach to the law to permit him to stultify himself for a consideration. *Mott* v. *Fowler, supra.* The question in issue is not whether the judgments of the court can be fixed by private contract; that can not be done. The question is whether appellee could bind himself; and that he might lawfully do. It follows that the court erred in striking out the exception. For the purpose of this decision, the allegations of the pleading are treated as true. The ultimate disposition of the cause depends upon the facts exhibited by evidence. Other questions argued will not probably arise upon another trial.

Judgment reversed, and cause remanded, with instructions to overrule the motion to strike out subdivision one of exception two, and for further not inconsistent proceedings.