[Filed November 10, 1890.]

## JAMES STEEL, ADMINISTRATOR, RESPONDENT, *v.* JOSEPH HOLLADAY, PETITIONER AND APPELLANT.

RECEIVER—SALARY.—When the parties to a litigation by their attorneys ask the appointment of a person as receiver who is an interested party and represent to the court that his appointment would save the salary to the estate of the receiver then in office, and the court makes such appointment, and he serves as such receiver until removed without making any claim for compensation, upon an application to the court after such removal to be allowed a salary during the time he so served, and the court below refused to make such allowance; *held,* that no error was committed.

APPEAL from Multnomah county: E. D. SHATTUCK, judge.

*Williams & Wood* and *Mitchell & Tanner*, for Respondents.

*R. & E. B. Williams* and *C. H. Carey*, for Appellant.

LORD, J., delivered the opinion of the court.

This is an application of Joseph Holladay for compen-sation as receiver for services performed as such, in the care, custody and management of certain property, during the period named therein.  The petitioner was appointed jointly with Geo. Weidler as such receiver, and alleges that a reasonable compensation for his services would be the sum of $250 a month, which aggregates for the period during which he performed such services in all the sum

of $9,500, etc. After issue was joined, the evidence taken, and the court fully advised in the premises, it found the following facts: "First, that at the time of the appoint- ment of said Geo. W. Weidler and Joseph Holladay receiv- ers herein by the order and decree of this court, it was the understanding and agreement, and it was so repre- sented to the court at the time of their appointment, that in case they should be appointed such receivers in place of D. P. Thompson they should not receive or claim any compensation for their services as such receivers, they both being interested in the property of which they were appointed receivers—the said Joseph Holladay as mort- gagee in possession thereof, and the said Geo. W. Weidler as the owner of three-eighths of the capital stock of the Willamette Steam Mills Lumbering and Manufacturing Company; and that said Joseph Holladay continued to be, while he was such receiver, a mortgagee in possession of said property of which he was appointed receiver, and having and holding a lien thereon to the extent of $346,686.46, and was largely interested in said property as such mortgagee and was also the principal party defend- ant to the said suit to which he was appointed such receiver, and would not have been appointed a receiver therein without the consent of Ben. Holladay; and that he consented thereto with the understanding that said Joseph Holladay, if appointed such receiver, would not claim or be entitled to any compensation as such receiver; and that in order to be appointed one of said receivers he consented to act without compensation, and continued so to act during the whole time he was such receiver, without ever having filed or made any claim herein for compensation as such receiver," etc.

The evidence upon this finding tends to show that there never was any agreement that the petitioner Holladay should not receive any compensation for his services as such receiver, but it does tend to show that there was a general understanding among the attorneys who repre- sented the parties to the suit, and that it was so represented

to the court, that the appointment of the petitioner and
Mr. Weidler would result in saving to the estate the salary
of the receiver then in office.　　The petitioner was a heavy
lien holder against the estate and his appointment would
hardly have been asked or allowed by the court unless the
consent of the adverse party was understood at least to
have been obtained.　　Judge Bellinger, who was of counsel
for the adverse party, after admitting some conversations,
in which it was talked over by the attorneys in respect to
an understanding or agreement among themselves that
the appointment of the petitioner and Weidler would save
the estate the expense that was incurred in keeping D. P.
Thompson in office, was asked:

Question—"I think you and Mr. Strong and others were
present at these conversations and all parties were repre-
sented.　　We were present in court here when the matter
was presented to the court."

Answer—"Yes."

Q.—"Wasn't it stated to the court when this matter was
submitted　*　*　*　that it would result in a saving to the
estate?"

Ans.—"I think I so stated to the court myself; I think
I urged it upon the court."

Q.—"Saving the salary of the receiver?"

Ans.—"Yes."

It seems to me that these facts indicate that the matter
of saving the expenses of a receiver had been talked over
by the attorneys of the respective parties; that they were
present in court when the appointment was asked, and
when Judge Bellinger stated and urged upon the court,
as a reason for the appointment, that it would result in a
saving of the salary of the receiver, and that such represen-
tation so made became one of the material facts upon
which the order for the appointment was predicated. It is
true that in this connection Judge Bellinger immediately
adds that it was then thought by them that the estate
would soon be settled up; that he had no idea it would
continue in the way it has, and involve the labor it has

imposed upon the receivers, and expresses the opinion that his statements in this regard ought not to preclude the petitioner or especially Mr. Weidler from his right of compensation; "for the fact is," he says, "at that time I supposed the thing would be over in a very little while; we were already negotiating, thinking we could raise the money, and sell this whole property out to a syndicate in the course of a few months, and straighten it all up."" This is undoubtedly true, for all the evidence, so far as I have examined it, tends to corroborate it. The reason, then, at the time the appointment of the petitioner was asked, that the matter of saving the salary was urged in favor of that appointment was based on the supposition, honestly entertained and which circumstances seem to justify, that an arrangement could be made by which a speedy settlement of the estate could be effected, and the whole matter cleaned up in a few months. This expectation was doomed to disappointment: instead of requiring only a few months to settle the estate, over three years elapsed in which the petitioner performed duties in regard to its custody and management, prior to his removal, and the estate was not then settled. It perhaps might be inferred from an agreement in which all the parties had joined, which had been made two days previous to the appointment of the petitioner and Weidler, and in which it was stipulated that the court might remove the receiver then in office and appoint the petitioner and Geo. Weidler receivers to take charge of, manage and dispose of the property mentioned in the memorandum specified during the term of three years, provided in that agreement that a longer period than a few months was understood and anticipated for the settlement of that estate. But, I take it, the time specified in the agreement was not considered, nor inserted with reference to the time it was expected that such receivers, if appointed, should serve, so much as to make sure, no matter what unforseen complications might arise, enough time should be provided to other pur-poses for which that agreement was executed. In this

view it is consistent with the expectation entertained that the estate might and would be speedily settled. Considering, then, that such was the expectation that only a short period of service was anticipated, when it was suggested to the court that the appointment of the petitioner and his co-receiver would save the expense of the salary of the receiver then in office, it does not appear that the court was of that expectation or calculation, or however that may be, ought such consideration to influence us to obviate the effect of such representation, if it induced the court to act and make the appointment and grant the allowance prayed for by the petitioner, when he continued to serve during all that time without complaint or compensation?

The circumstances already indicated present the parties pro and con by their attorneys before the court, all favoring the appointment asked for, and during the consideration of which it is represented and urged upon the court that the making of such appointment would result in saving the salary of the receiver to the estate; and the court acting upon such representation, makes the order for the appointment, is not such a representation a foundation stone upon which that order of appointment was made, as much so as if the court had so stated in its order, and ought not the petitioner to be bound by it in the absence of any complaint or application for its modification and allowance of reasonable commissions or salary? Was not the court and those interested in the preservation of the estate justified in assuming, at least under such circumstances, that compensation was not expected, and that the services were continued on the terms which induced and secured his appointment? When it is considered that the appointment lies with the court below, who is supposed to be familiar with the transaction or litigation requiring it, and the reasons for it, the ineligibility of the petitioner without the consent of the adverse party, the representation of saving expenses to the estate to secure it, the many reasons, family and otherwise, which will readily occur for

his serving without compensation, the admission to others that he was so serving, the corroborating circumstances that he did continue to serve from the appointment to his removal without any claim for compensation, and the seeming want of any other object to be served by the removal of the receiver then in office, without some such reason it seems to us no sufficient cause is shown for our interference, or to authorize us to remand the proceeding for the ascertainment of the value of such services. It results that, in our judgment, the decree must be affirmed.