Polk v. Johnson.

---

## POLK v. JOHNSON.

[No. 20,071.   Filed March 19, 1903.]

RECEIVERS.—*Appointment.*—While the appointment of a receiver is a judicial act, it is not improper for the judge making the appointment to seek the counsel and opinion of those interested in the trust as to the fitness of the person to be appointed. *p. 295.*

SAME.—*Appointment.*—*Agreement as to Compensation.*—*Public Policy.*— A receiver, prior to his appointment, sought the insolvent and importuned him to assist him in procuring the appointment as receiver, and, to induce such assistance, promised and agreed, if appointed, to discharge the duties thereof with diligence and fidelity, and without any charge or compensation. *Held,* that the agreement was not invalid for public impolicy as an unwarranted interference with the freedom of judicial action. *pp. 296-298.*

SAME.—*Appointment.*—*Agreement as to Compensation.*—*Consideration.*— *Gratuitous Service.*—An agreement entered into between an insolvent debtor and creditor that if the debtor would consent to the appointment of the latter as receiver he would serve without compensation is not invalid for want of a sufficient consideration. *p. 299.*

From Johnson Circuit Court; *Vinson Carter,* Special Judge.

Grafton Johnson filed his final report as receiver of the property of James T. Polk and the latter filed exceptions thereto. From an order of court sustaining a motion to strike out the exceptions, James T. Polk appeals. Appealed from Appellate Court, under clause 3, §1337j Burns 1901. *Reversed.*

*L. J. Hackney, C. F. Coffin, Wm. Eldridge* and *E. F. Barker,* for appellant.

Polk *v.* Johnson.

*G. M. Overstreet, E. L. Branigin, E. A. McAlpin, R. M. Miller* and *H. C. Barnett,* for appellee.

HADLEY, C. J.—Appellant James T. Polk conducted a large canning and dairy business at the town of Greenwood. His affairs became greatly involved, and he probably insolvent. Tingle, a creditor for a small amount, brought an action in the Johnson Circuit Court for judgment on an account, and for the appointment of a receiver. Polk answered, admitting the averments of the complaint, and confessing that a receiver ought to be appointed. Whereupon the court appointed appellee Grafton Johnson as such receiver, who qualified and entered upon the discharge of his duties. In his amended final report as such receiver, Johnson claimed an allowance for his services in the trust in the sum of $20,000.

Appellant Polk filed exceptions to said report; subdivision one of exception two being as follows: "It is shown to the court that the property and business of the estate of said receivership have at all times been located at the town of Greenwood, whose population was, when the receiver herein was appointed, about 1,000, and was, to a considerable degree, supported by said business; that said Johnson and his family, when this proceeding was instituted, owned vast properties in and about said town, consisting of business houses and rental dwellings and farming lands, the rental value and rentals of which depended, in a great measure, upon the continued operation of said business,— the said business employing the principal part of the labor of said community; that, in addition to said interests of said Johnson in the prosecution of said Polk's business, he was conducting a banking business which was patronized by said Polk, and said Johnson at said time was a creditor of said Polk in a large sum, the success of which credit, in a measure, depended upon the value of the plant and business of said Polk, and said value depended almost wholly upon the continued prosecution of said business. In view

of the foregoing facts, the said Johnson, well knowing that the court, or the judge thereof, would probably not appoint a receiver of said property and business who was objectionable to said Polk, sought said Polk, and importuned him to make no objection to his [said Johnson's] appointment as receiver, and to consent to and to request the court to appoint him such receiver; that to induce and persuade said Polk so to withhold objection and so to consent and request, the said Johnson urged that his above-named interest in the business of said Polk, and its successful operation, and his personal friendship for said Polk were such that he could and would, if appointed receiver, discharge the duties of the trust with diligence and fidelity, and without allowance or compensation other than he would receive from the advantages to the said properties, to the said banking business, and to the amount so owing to him; that by reason of the said interests of said Johnson in the success of said business, and by reason of this said promise to discharge the duties of receiver without allowance as aforesaid, the said Polk did not object to said Johnson's appointment as receiver, but consented to such appointment, and requested the court and the judge thereof that said Johnson, by reason of said promises, be appointed receiver of said property and business; that in addition to his said consent and request for the appointment of said Johnson, other persons interested, personally and as creditors of said Polk, requested the court and judge thereof so to appoint said Johnson, because of the economy to said estate in conducting the receivership without salary, fees, or allowances; that in view of the facts aforesaid, and of the further facts that the said Johnson was well qualified for the duties, he was appointed and acted as receiver of said estate. And of each and all of the foregoing facts the said Polk offers to make proof."

The receiver's motion to strike out the above exception, because the same did not contain facts sufficient to consti-

tute a valid objection to the report, was sustained, and the receiver allowed $9,500 for his services.    This action of the court presents the controlling question in the case.

1.    We assume at the outset that there is no reasonable ground for discussion upon the first proposition advanced by appellee, viz., that the litigants have no power to select a receiver for the court by private agreement, even though such agreement is based upon their views of the fitness of the one chosen, and economy to the trust in his appointment. We also take it to be generally acknowledged that the appointment of the receiver, and the fixing of his compensation, are judicial acts that can not be abdicated by the court to one or both the parties to the suit.    But while it must be conceded that the ultimate appointment rests solely with the court, to be determined by the exercise of his discretion, we find no principle recognized by the authorities, or supported by sound reason, that forbids the judge the freest access to the counsels and opinions of those interested in the trust, with respect to the most proper selection.    Indeed there are many reasons why the cautious judge would seek the advice of others, in cases where he has imperfect knowledge of the fitness of available men, even outside of the parties in interest.    There is nothing peculiar in the appointment of a receiver, that his selection must be evolved wholly from the personal knowledge and observations of the judge.    The usual course of practice in the English court of chancery in such matters was to refer the selection to a master.    Then interested parties were at liberty to appear before the master and nominate suitable persons, from among whom the master would choose the one whose qualifications and fitness his judgment most approved, and report his selection to the court.    A similar practice also prevailed in New York prior to their adoption of the present code of procedure.    High, Receivers (3d ed.), §§63, 64.

The same considerations that induced the reference to a master under the old practice are now applicable to the

judge, who is called upon to act without a reference, and who will usually give favorable consideration to one that has been agreed upon by the parties. High, Receivers (3d ed.), §65; Beach, Receivers (2d ed.), §§30, 31; Smith, Receivers, 62.

2. But it is argued that the agreement entered into for the purpose of influencing the appointment was an unwarrantable interference with the freedom of judicial action, and invalid for public impolicy. It will be borne in mind that in the appointment of a receiver, or other such administrative officer, the chief ends to be attained are efficiency and economy in the administration of the trust. It is the officer, and not the mode of selection, that the law regards as important; and, outside those prohibited by statute, the judge, in the exercise of his sound discretion, will select from among those available the one whom he believes, from all the circumstances, will give the most beneficial service. And if efficiency and economy can be secured by private agreement, open and fairly entered into, with one who is willing to perform the work of administering for considerations moving to him wholly outside the trust, we perceive no principle of law, or public policy, that forbids the making of such a contract. The court will closely scrutinize the bargain, when known to him, and if it seems clear that the bargainer is qualified, and the contract free from overreaching and will be beneficial to the trust, the court may properly respect the contract, and make the appointment in pursuance of its terms. *State* v. *Johnson,* 52 Ind. 197; *Ross* v. *Conwell,* 7 Ind. App. 375; *Bate* v. *Bate,* 74 Ky. 639; *Ephraim* v. *Pacific Bank,* 136 Cal. 646, 648, 69, Pac. 436; *Steele* v. *Holladay,* 19 Ore. 517, 25 Pac. 77; *Secor* v. *Sentis,* 5 Redf. 570; *Bowker* v. *Pierce,* 130 Mass. 262; *In re Hopkins,* 32 Hun 618; *Rote* v. *Warner,* 17 Ohio C. C. 350; *M'Caw* v. *Blewit,* 2 McCord (S. C..) 90; *Bassett* v. *Miller,* 8 Md. 548; *Dolfield* v. *Kroh,* 62 Md. xiii; *Koch's Estate,* 148 Pa. St. 159, 23 Atl. 1057; *In re*

*Hay's Estate,* 183 Pa. St. 296, 38 Atl. 622; Kerr, Receivers (3d ed.), 185.

Beyond question, a person may waive compensation for any labor performed, both before and after completion; and it is a familiar doctrine that one can not, after performance, change his mind, and charge for that which he agreed and undertook to do as a gratuity. *In re Estate of Davis,* 65 Cal. 309, 4 Pac. 22; *Barry* v. *Barry,* 1 Md. Ch. 20; *Ridgely* v. *Gittings,* 2 H. & G. (Md.) 58; *In re Cooper,* 93 N. Y. 507, 512; *Mulligan's Estate,* 157 Pa. St. 98, 27 Atl. 398; *Vestry, etc.,* v. *Barksdale,* 1 Strob. Eq. (S. C.) 197.

According to the averments of the exception, appellant Polk owned and was conducting a large canning and dairy business at Greenwood, employing therein most of the labor of the community, and contributing largely to the support of the population of the town. Johnson and his family owned vast properties in and about the town, consisting of business houses, rental dwellings, and farm lands, the rental value of all of which depended largely on the continuance of Polk's business. Polk also kept his business account with Johnson's bank in said town, and owed the latter a large sum of money, which he probably could not pay if deprived of his business. Johnson sought out Polk and recited to him the foregoing considerations, and the vast importance he personally felt in keeping him (Polk) upon his feet, and his business going, and importuned the latter to assist him (Johnson) in procuring appointment to the position of receiver, and, to induce such assistance, promised and agreed, if appointed, to discharge the duties with diligence and fidelity, and without any charge or compensation beyond the benefits he would secure to his property, to his banking business, and in the collection of his debt; that relying upon Johnson's promise to perform the duties of receiver without an allowance, and other promises, Polk requested the court that said Johnson, by reason of his said

promises, be appointed such receiver, and others interested in the estate, for like reason and considerations, made similar requests of the court. The court, acting upon these requests, made the appointment.

Here, then, we have a contract entered into in good faith by the debtor, who, perhaps above all others, desired and sought the payment of his debts, and restoration to the control of his business. We may assume that he would not have requested the appointment of appellee, but for the special inducement held out, and, furthermore, that the court would not have appointed him, had he not been requested so to do by the debtor and a number of his creditors. The question therefore is, shall fraud and deception prevail? To permit appellee to repudiate his solemn engagement, and receive the compensation usual for such services, is to give the sanction of the law to craftiness and chicanery as a means of securing an important and highly remunerative position, not otherwise obtainable. This can not be the law. It is not averred in the exception whether or not the private agreement of Johnson was communicated to the court before his appointment, or that the court had or had not knowledge of it at the time the appointment was made. But while in such cases the proper course is fully to acquaint the judge with the nature and terms of such private treaty before he acts upon the appointment, yet, as between the enforcement of an agreement fairly made with all the beneficiaries of the trust, or made with some of them manifestly for the best interest of all, and by reason whereof his appointment is secured, and permitting such agreement to be used as a cloak to secure a coveted position by double dealing, it is much more in accord with public policy and sound morality to require performance, than to allow the obligee to put aside his covenant after it has served his artful purpose. It is no excuse for appellee to say that he found the duties of the office more onerous than he expected. When he found his expectations disappointed,

he was at liberty to resign and give the position over to another; but, having held on to it, he will be deemed to have held it upon the terms upon which it was sought and undertaken.

3. The contention, that the contract for gratuitous service is invalid for want of a sufficient consideration, can not be sustained. Appellee received all the bargain called for. He received Polk's assistance in procuring the appointment, and incidentally enjoyed all the material benefits to his property anticipated. There being at least some legal consideration rendered, what was accepted by him at the time as satisfactory will be adjudged by the court as sufficient. As was well expressed by this court in *Wolford* v. *Powers,* 85 Ind. 294, 303, 44 Am. Rep. 16: "Where a party contracts for the performance of an act which will afford him pleasure, gratify his ambition, please his fancy, or express his appreciation of a service another has done him, his estimate of value should be left undisturbed, unless, indeed, there is evidence of fraud. There is, in such a case, absolutely no rule by which the courts can be guided, if once they depart from the value fixed by the promisor. If they attempt to fix some standard, it must necessarily be an arbitrary one, and ascertained only by mere conjecture. If, in the class of cases under mention, there is any legal consideration for a promise, it must be sufficient for the one made; for, if this be not so, then the result is that the court substitutes its own judgment for that of the promisor, and, in doing this, makes a new contract." See, to the same effect, *Vigo, etc., Soc.* v. *Brumfiel,* 102 Ind. 146, 52 Am. Rep. 657; *Keller* v. *Orr,* 106 Ind. 406; *Price* v. *Jones,* 105 Ind. 543, 55 Am. Rep. 230; *Shover* v. *Myrick,* 4 Ind. App. 7-10.

There are other subsidiary questions in the record that are not likely to arise again, and hence have not been considered.

The judgment of the trial court is reversed.