COOPER ET AL. *v*. MORRIS, RECEIVER ET AL.

[No. 26,418. Filed March 5, 1936. Rehearing denied
May 20, 1936.]

*Barnard & Walker, Merle N. A. Walker, Victor R. Jose, Jr.* and *Gavin & Gavin,* for appellants.

*Charles E. Cox* and *Floyd W. Burns,* for appellees.

TREMAIN, J.—George J. Mayer Company filed an action against the United States Encaustic Tile Works, a corporation, upon an account in the sum of $41.93. It was alleged in the complaint that the defendant was indebted to the plaintiff and numerous other creditors in a large sum, much of which was past due; that the defendant was in imminent danger of insolvency; that the property of the defendant was worth more than $100,000; that it was without funds and could not borrow a sum sufficient to operate its plant or to provide for the expense of protecting the property; that the taxes were due; and that a receiver should be appointed to care for the property and, if possible, to acquire funds for its protection and operation.

Notice was served upon the defendants, who appeared and filed answer in general denial. The cause was submitted to the court, and *upon agreement of all the parties,* Donald S. Morris was named as receiver, and directed to give bond in the sum of $100,000, which he did with the Fletcher Trust Company as surety thereon. The appointment was made October 1, 1932, and he immediately proceeded with the operation of the plant.

On January 26, 1933, the receiver filed a petition for the sale of the assets in his hands. The appellants, on March 2, 1933, filed objections to the sale. They alleged that the assets were of a value of approximately $400,-000; that the report of the receiver did not show an operating loss; that the indebtedness to the Fletcher Trust Company was approximately $100,000, and that the other indebtedness did not exceed $2,500; that the Fletcher Trust Company had agreed that if the stockholders should advance certain monies to the concern, it would continue from time to time to renew its loans, represented by notes; that the stockholders were endeavoring to procure funds with which to refinance the tile company; that the receiver, Donald S. Morris, was a trust officer of the Fletcher Trust Company, and had paid all the indebtedness except that due to the trust company; that no benefit would be realized by the stockholders by sale at that time. They asked that the sale be deferred for at least ninety days to give them an opportunity to refund the indebtedness owing to the Fletcher Trust Company. The matter was carried in the court below until June 24, 1933, when an order of sale was entered.

Among other things, the court found that the receiver had been conducting the business at a considerable loss to the trust, including the cost of capital employed represented by the real estate, plant, and equipment of the corporation; that a continuation of the business was essential to the maintenance of the value of its assets, but such continuation would probably result in a material depletion of the assets; that the value of all the property in the hands of the receiver was less than the total amount of the indebtedness; that a sale of the real estate, together with the entire plant and all assets of the corporation, except certain claims, was essential to obtain the full value thereof; that a sale should be made as soon as practicable.

It was ordered that the receiver should offer the property for sale at private venue at not less than $150,000 in cash, subject to the approval of the court; that said receiver should continue from day to day to so offer said property and assets until the 2nd day of October, 1933, upon which day at eleven o'clock in the forenoon, at the south door of the Court House in Indianapolis, if a private sale had not been consummated, said receiver should offer for sale and sell the property and assets at public sale for the best price obtainable in cash, subject to the approval of the court; that the receiver give three weeks' successive notice in a newspaper of general circulation, printed and published in Marion County, and post notices, as required by the order.

The evidence shows that in addition to the notices required, the receiver corresponded with prospective bidders in other cities; that he had many conversations with stockholders of the United States Encaustic Tile Works; that he made diligent effort to sell the property during the time intervening from the date of the order of sale to October 2nd, and received no bids; that the property was offered at public sale on October 2nd, as directed, and Frank B. Slupesky bid therefor the sum of $106,000 in cash, which was the only bid received and more than two-thirds of the upset price of $150,000.

The receiver reported the sale to the court October 3, 1933. The appellants filed objection to the confirmation of the same, and among other things alleged that practically all the indebtedness, except taxes, was due to the Fletcher Trust Company; that under the present market condition, it would be disastrous to the interests of the stockholders to compel a sale at such value; that they were making an effort to secure funds to repay the Fletcher Trust Company, and expected to get a loan through the Reconstruction Finance Corporation, or one of its auxiliaries; that the proposed sale as reported by the receiver was not a bona fide sale; that Slupesky

was an employee of the receiver in the management of the business, and had not been co-operating with the stockholders; that there was no occasion for the appointment of a receiver since the assets were three times the amount of the indebtedness; that there was no necessity for making the sale at that time; that Slupesky was acting for the benefit of the Fletcher Trust Company; that the receiver had made no general effort to find a market for the property; and that there had been no complete valuation of the present accounts receivable. Wherefore, the appellants objected to the confirmation of the sale, and asked that the court grant additional time for its sale to be made under "a disinterested administration of the affairs of such corporation." The receiver filed an answer in general denial to the objections.

On December 20, 1933, the court overruled the objections and confirmed the sale. The order confirming the sale recited the presence of the parties in court at the time, and the history of the proceedings from the time the petition for the sale was filed; that a hearing upon the report and the objections thereto was had by the court; that John J. Cooper, who represented the stockholders, appellants herein, by his attorneys in open court waived all objections to the approval of said report of sale, except the objection "that the proposed sale as reported in said Receiver's report is not a bona fide sale." On the issues joined, the order recites that the court heard evidence and argument of counsel, took the same under advisement, and, after being fully advised in the premises, denied the petition for a postponement of the sale, and overruled the objection to its approval.

The court found that the receiver had given notices of the time, terms, and place of the sale as required by the order; and that the property was sold at public

auction to Frank B. Slupesky for the sum of $106,000 in cash, that being the highest and best bid therefor, and more than two-thirds of the upset price fixed by the court. It was found that Slupesky, the purchaser, had transferred and assigned his interest to the United States Tile Corporation. It was ordered that the sale be approved and confirmed, together with all the acts of the receiver as by him reported, and that he execute his deed conveying the property to the United States Tile Corporation, to which the appellants objected.

A motion for a new trial was filed upon the grounds that the decision of the court was not sustained by sufficient evidence and was contrary to law. The motion was overruled and the appellants excepted and appealed to this court, and assigned as errors relied upon for reversal: (1) The court erred in ordering the sale of the assets of the United States Encaustic Tile Works; (2) the court erred in ratifying, confirming, and approving the sale; (3) the court erred in overruling the appellants' motion for a new trial; and (4) the court erred in overruling the appellants' exceptions and objections to the receiver's report of sale.

In order to clearly understand the question involved, it should be stated that at the hearing upon the objections filed to the receiver's reported sale, two witnesses were called by the appellants, the receiver and Slupesky. No other witnesses were examined by either party. The receiver testified that he made and filed an inventory of all the assets in his hands; that the inventory was kept to date until sometime in September before the sale was had on October 2nd; that when he had any inquiry from prospective purchasers, he placed before them all of the facts pertaining to the Encaustic Tile Works, including a full report of its business during the five years preceding the appointment of a receiver; that he corresponded with brokers in Chicago

and other parties, and talked with many persons in the city of Indianapolis; that among those consulted about the sale was Mr. Miller of the Fidelity Trust Company, who was interested in the property; that the receiver had as many as fifty conversations with him; that he also conversed not only with Mr. Cooper numerous times, but with his attorney; that after his appointment, he borrowed $5,000 on two occasions from the Fletcher Trust Company, and paid current bills amounting to $7,900; that the expenditures included $3,600 of taxes; that the materials on hands at the time of sale of the plant were approximately the same as were the materials on hands at the time of his appointment; that he collected all bills receivable at the time of his appointment; that the bills receivable held at the time of the sale were for goods sold during the operation, and amounted to approximately the same as were the bills receivable inventoried in the beginning; that at the time of the sale, the only indebtedness was that due to the Fletcher Trust Company on account of money borrowed by the Encaustic Tile Works and by the receiver, in the total amount of $111,000, upon which no interest had been paid; that the total indebtedness of the receivership at the time of sale amounted to $121,000; that everyone who made inquiry about purchasing the property was fully apprised as to all details in connection therewith; that Slupesky was the president of the tile company at the time the receiver was appointed and was continued as manager after the appointment; that Slupesky, Evans Woollen, Jr., and William B. Schiltges, the latter two being vice-presidents of the Fletcher Trust Company, organized a new company known as the United States Tile Corporation for the purpose of taking the plant over when bid in by Slupesky; and that the Fletcher Trust Company loaned $106,000 to Slupesky to pay the receiver, which indebtedness was to be

assumed by the United States Tile Corporation, upon the approval of the sale and transfer to that corporation. The foregoing facts were undisputed.

The principal objections made by appellants are that Mr. Morris should not have been appointed receiver; that he had no legal right to act as such since he ██ was a trust officer of the Fletcher Trust Company, the largest creditor of the Encaustic Tile Works; that the sale made to Slupesky was in fact a direct sale to the receiver himself; that the fact that he was an officer in the same trust company with two of the incorporators of the new corporation created to take over·the tile plant, gave him an interest therein, and made the sale void; that he was not disinterested; that these facts disclose it was not a bona fide sale; and that fraud will be presumed from the foregoing facts. In support of this proposition, the appellants cited *Morgan et al.* v. *Wattles et al.* (1879), 69 Ind. 260; *Clark, Admr. et al.* v. *Wilson et al.* (1881), 77 Ind. 176; *Comegys et al.* v. *Emerick et al.* (1893), 134 Ind. 148, 33 N. E. 899; *Herrick* v. *Miller, Executor et al.* (1890), 123 Ind. 304, 24 N. E. 111.

These cases go to the question of a receiver, administrator, or administratrix selling directly or indirectly to himself in fraud of the heirs or interested parties. As the court views the situation, the receiver was not a purchaser. He was not one of the organizers of the new corporation. He was an officer of the largest creditor. That line of cases which holds to be void, sales made directly to the receiver, administrator or executor are distinguishable from the case at bar. The Comegys case, *supra,* states the rule correctly upon that subject. It quotes from *Earle* v. *Earle* (1883), 91 Ind. 27, 42, as follows:

"The general and correct rule, as established by the weight of authority, is, that a judgment by a court of competent jurisdiction is not void, unless

the thing lacking, or making it so, is apparent upon the face of the record. If the infirmity does not so appear, the judgment is not void, but voidable."

Upon this authority and other decisions along the same line, the court cannot follow the appellants' contention and hold the sale to be void.

It will be conceded upon general principles that a receiver should be impartial and disinterested. He should be indifferent as between claimants and litigants. No one should be appointed who is in such position that a dual interest might arise between his personal affairs and his duties as a receiver. Mr. Morris was attorney for the plaintiff who asked for the appointment; he was vice-president and trust officer of the Fletcher Trust Company, the largest creditor and his bondsman; the sale was made by him as receiver to Mr. Slupesky, the president of the old Encaustic Tile Works and who continued as manager during the time the plant was operated by the receiver, and who, together with two officers of the Fletcher Trust Company, organized the United States Tile Corporation to take over the plant. In making the appointment of Morris as receiver, the order of the court provided that neither he nor his attorney should receive any compensation for services from the trust property. The trust company loaned the receiver the sum of $10,000 to be used in operating the plant and to pay current bills, taxes, and other creditors. It is obvious that the trust company was deeply interested in the receivership, due to its large claim, and that it made additional loans in order to satisfy other creditors and to protect its claim. Otherwise, why would the trust company have made additional loans and become surety upon the bond of the receiver, and the receiver and his attorney be willing to perform the services without compensation? The receiver was not a disinterested person. Ordinarily his

interest would disqualify him wholly from serving as a receiver. Appellants claim that these facts disqualify him and show collusion and bad faith, and make the sale void.

It is recalled that he was appointed receiver *by agreement of all the parties*. The evidence and the findings of the court show that the Encaustic Tile Works was insolvent, unable to pay taxes and interest on its indebtedness, or to maintain and operate its plant without loss. The order of the court appointing the receiver directed him to operate the plant. He did this for a time at a loss. He then filed a petition for the sale. This matter was carried until June, following the application in January, when it was ordered sold upon giving legal notices. Other efforts to secure a purchaser are recited herein. Mr. Cooper seemed to have held a power of attorney from other stockholders and to represent them in the business transactions. He objected to the sale and claimed that the plant was worth $400,000, and asked for ninety days' time in which to provide means to purchase the plant. At least twice that time was given, when it is considered that the plant was not sold at public auction until October 2nd, and then the sole and only bid was the one submitted by Slupesky. Mr. Cooper and the other stockholders had full notice of the order of sale and were given every opportunity to bid, but did not. Interest on indebtedness and expenses were depleting the assets. Appellants have made no effort to show their good faith by giving security or otherwise disclosing to the court that if the sale were set aside, the property would sell for as much as it did in October, 1933.

There are special statutes governing sales in decedents' estates, by receivers in assignment for the benefit of creditors, and in partition suits, which provide that anyone dissatisfied with the sale of property by trust

officers may file objections, accompanied by a bid, with surety, raising the sale price ten per cent, and the sale will be set aside. Sections 17-111, 3-2417, 6-1133, Burns' Ann. St. 1933 (§§759, 1120, 3174, Baldwin's 1934). There seems to be no statute of this nature applying particularly to a sale under circumstances here presented. Nevertheless, the statutory rule applying to these other estates affords a wholesome rule to be applied to an action of the nature here considered. At least it would show good faith upon the part of the objectors.

This case was argued orally in this court on January 21, 1936. The appellants' counsel insisted that the property was two or three times the value for which it sold. In reply thereto appellees' counsel, in open court, stated that at the hearing in the lower court upon objections to the confirmation of the sale, an offer was made to appellants to transfer all the property to them if they would pay the amount of the bid, $106,000. A member of the court thereupon inquired whether or not the record disclosed that fact. Appellees' counsel stated that it did not, but added that the offer remained open and if appellants would produce that amount, the conveyance would be made. This offer was not accepted. The court cannot help taking notice of the good faith of the appellees. It is quite evident that the purchaser at the sale would prefer to have that amount of money than to have the plant. From this fact the court also draws the conclusion that if the plant were worth two or three times the bid, the appellants should not have much trouble in financing it. From these facts it must appear that there is not much disparity between the sale price and the real value. The court takes judicial notice of the history of the country and therefore is in a position to compare the financial conditions existing in October, 1933, and now.

At the time the order of sale was made, the appellants waived all objections thereto, except that it was not a bona fide sale, and this is the only question before the court. The others are waived. 53 C. J. 85, Section 104. The court is unable to discover any evidence that the sale was not bona fide notwithstanding the appointment of an interested party as receiver upon agreement of the parties. Doubtless he should not have been appointed receiver because of his interest. The trial court, in such cases, should exercise its discretion and appoint one who is wholly disinterested and thus obviate the unfortunate situation here presented.

Generally speaking, the agent, employee, or attorney of the party actively engaged in obtaining a receivership should not be named as receiver. It is contrary to the statute, Section 3-2604, Burns' Ann. St. 1933 (§1144, Baldwin's 1934), but this rule is held not to be inflexible. For instance, if he is a man of integrity, experienced, outstanding, and agreed upon by the parties to the action, the rule is otherwise. 53 C. J. 72, 73, and authorities there collected have recognized this rule. *Polk* v. *Johnson* (1903), 160 Ind. 292, 66 N. E. 752; *Crawford* v. *Gray* (1892), 131 Ind. 53, 30 N. E. 885.

In the last case cited one of the executors of a will was the husband of the purchaser at executor's sale. The sale was made through a bid by the son-in-law. Exceptions were taken, and upon adverse ruling, the exceptors appealed to this court. In that case the land was offered for sale at public auction. All who desired had the right to bid, and it was held that a bid by the wife of one of the executors did not show bad faith upon the part of the executor, and the sale was confirmed. Also see 53 C. J. 210, Section 331.

It is charged by the appellants that there was collusion by the receiver, Slupesky, and the officers of the bank, but the court does not find such charges substan-

tiated by the evidence. It appears that the receiver made every effort to secure a purchaser; that the Fletcher Trust Company loaned money to the receiver, upon order of the court, to pay current bills and taxes, all in an effort to protect the property. Considering the insolvency of the corporation, and that the indebtedness owing to the one creditor is in excess of the value of the property, and at the same time that the trust company, in its banking relations, would not likely desire to own a manufacturing plant, particularly under financial conditions existing in 1933, and the inability of the Encaustic Tile Works to procure funds to pay its indebtedness and operating expenses, and the offer of the receiver to cause all of said property to be conveyed to the stockholders of the old tile company, this court is unable to determine that there is anything of sufficient fraudulent nature, under the circumstances, to condemn the sale. 53 C. J. 213, Section 345.

The appellants' application to vacate or revoke the appointment of the receiver, and to have another administrator appointed to make the sale, was addressed to the sound legal discretion of the trial court upon the facts presented. The validity of the order making the appointment does not depend upon the mere discretion of the court or judge making it, and where the court, without any new showing or change of circumstances calling for judicial action, directs the order to be set aside as a nullity, it assumes authority not sustained by law. 53 C. J. 80, Section 94. The appellants ask this court to order the sale set aside as a nullity upon facts which should have been known to them at the time the receiver was appointed, and without a showing of changed conditions. The sale was made, upon a proper showing, by order of the court with jurisdiction to act. There is nothing in the proceedings to indicate that the receiver was not to sell the prop-

erty, but there was a valid showing of the necessity of the sale.

Separate and apart from the question of the receiver's relation to the Fletcher Trust Company many good reasons appear why the court should have ordered the sale to be made. Under all the circumstances here presented, this court can find no reason in fairness to all the parties to order a reversal of the cause. If the appellants had done anything to show their good faith or ability to furnish a purchaser upon a resale, the court might have reached a different conclusion.

Judgment affirmed.